IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

CMH HOMES, INC. and
CMH MANUFACTURING, INC.,

                Petitioners,

v.                                          CIVIL ACTION NO.   3:23-0442

JULIE BROWNING,
CHAD BROWNING,
SOUTHERN OHIO CONSTRUCTION, LLC,

                Respondents.

**MEMORANDUM OPINION AND ORDER**

On June 19, 2023, Petitioners CMH Homes, Inc. and CMH Manufacturing, Inc. (hereinafter collectively referred to as "CMH") filed a Petition to Compel Arbitration in this Court based upon diversity jurisdiction. *Pet. to Compel Arbitration*, ECF No. 1. Respondent Southern Ohio Construction, LLC ("Southern Ohio") responded and objected to CMH's characterization of facts and its interpretation of their Independent Contractor Application and Agreement. *Southern Ohio Constr., LLC's Resp. to Pet. to Compel Arbitration*, ECF No. 4. Nevertheless, it stated that it does not oppose arbitration to resolve all disputes in one proceeding. *Id.* at 2-3. On the other hand, Respondents Julie and Chad Browning argue the Petition should be denied or, alternatively, the Court should grant a short period of discovery to develop a factual record.[1] *The Brownings' Resp. in Opp. to Pet. to Compel Arbitration,* ECF No. 5. Upon consideration of the parties'

---

[1] Shortly, after briefing was complete, counsel for the Brownings withdrew and, as a result, the Court stayed the action for a period of thirty days to allow the Brownings to obtain substitute counsel. New counsel filed a Notice of Appearance on December 13, 2023, and the Court lifted the Stay on the following day.

arguments, the Court **GRANTS** the Petition to Compel Arbitration and **DISMISSES** this action from the docket of the Court.

# I.
# FACTUAL AND PROCEDURAL HISTORY

On August 27, 2019, the Brownings, who are West Virginia residents, signed a Sales Agreement and a Binding Dispute Resolution Agreement ("BDRA") with CMH for the purchase of a new modular home with a garage. *Pet. to Compel Arbitration*, at 2-3.[2] The home was constructed by CMH Manufacturing and sold to the Brownings by CMH Homes, both companies incorporated in Tennessee. *Id.* CMH then entered into a contract with Southern Ohio, an Ohio corporation, to construct a foundation and install the home. *Id.* at 2, 4. CMH asserts that most of the alleged defects and repair requests involve the foundation and installation of the home. *Id.* at 4.

The BDRA the Brownings and CMH signed requires mediation of disputes and, if mediation is unsuccessful, binding arbitration with the American Arbitration Association ("AAA"). CMH states that, pursuant to the BDRA, the parties to this action have mediated twice, but the mediator ultimately declared an impasse. *Id.*; *Ltr. from Monica Nassif Haddad, Mediator, to Jason J. Stemple, Jason Bowles, and Thomas F. Basile* (Mar. 5, 2023), ECF No. 1-2 at 2 (stating that after two mediations the parties "are at an impasse").[3] Therefore, CMH filed a demand for arbitration with the AAA, naming the Brownings and Southern Ohio as respondents. The

---

[2] CMH attached the Sales Agreement, the BDRA, Invoices with Southern Ohio, an Affidavit from a CMH Vice President, arbitration documents, and various other emails, letters, and other records to its Petition. ECF Nos. 1-1 to 1-11.

[3] The mediations appear to have occurred on August 18, 2022 and February 24, 2023.

Brownings responded by asserting, *inter alia*, the precondition of mediation to arbitration was not met because negotiations were ongoing and, in any event, the BDRA is unenforceable as unconscionable. *See Answering Statement/Countercl. of Chad Browning and Julie Browning*, 1-3 (May 2, 2023), ECF No. 1-3.

Despite the Brownings' objections, an arbitrator was selected and a status conference was held on June 16, 2023. *Pet. to Compel Arbitration*, at 5. Given the Brownings' objections, however, the arbitrator gave the parties until June 26, 2023 to file a court challenge to arbitration and, if one was filed, the arbitrator said the arbitration would be suspended until a decision or agreement is reached. *Email from Michael L. Fortney, Arbitrator, to counsel* (June 16, 2023), ECF No. 1-5. On June 19, CMH filed this action to compel both the Brownings and Southern Ohio to participate in arbitration.

## II.
## DISCUSSION

Section 2 of the Federal Arbitration Act ("FAA") provides that an arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract[.]" 9 U.S.C. § 2. If one party to a written arbitration agreement refuses to arbitrate, Section 4 authorizes another party to file a petition in a district court for an order directing that arbitration proceed under the agreement.[4] To compel arbitration, a movant must show:

---

[4]In relevant part, Section 4 provides:

> [a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28, in a civil action

> "(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute."

*Adkins v. Lab. Ready, Inc.*, 303 F.3d 496, 500–01 (4th Cir. 2002) (quoting *Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir. 1991)). If the court finds that an arbitration agreement is valid and governs the issues presented, the court "has no choice but to grant a motion to compel[.]" *Id.* at 500 (citing *United States v. Bankers Ins. Co.*, 245 F.3d 315, 319 (4th Cir.2001)).

Here, the Court finds the *Adkins* criteria are easily met. Clearly, there is a dispute between CMH and the Brownings. There is a written BDRA executed by the parties that purports to cover their dispute.[5] The transaction involves interstate commerce as the modular home was manufactured in Tennessee and installed in West Virginia. Additionally, the Brownings have objected to arbitration. Thus, the Court must compel arbitration provided the agreement is otherwise enforceable.

However, as the Brownings challenge the validity of the agreement, the Court must determine whether it is enforceable. Of course, it has long been held that "arbitration is a

---

> . . . of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C. § 4, in part. In this case, the parties do not contest that this Court has diversity jurisdiction over the matter pursuant to 28 U.S.C. § 1332.

[5] The BDRA provides, in part, that it "applies to all . . . claims . . . arising out of or relating to . . . the design and construction of the Home . . . ." *BDRA*, at 1, ECF No. 1-1, at 7.

matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960). Although arbitrability disputes are governed by federal law, "ordinary state-law principles resolve issues regarding the formation of contracts." *Am. Gen. Life & Acc. Ins. Co. v. Wood*, 429 F.3d 83, 87 (4th Cir. 2005) (citations omitted). For example, an arbitration agreement may be invalidated upon a showing of "'fraud, duress, or unconscionability . . . without contravening § 2'" of the FAA. *Id.* (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)).[6] Additionally, as the Supreme Court stated in *Morgan v. Sundance, Inc.*, 596 U.S. 411 (2022), "a court must hold a party to its arbitration contract just as the court would do any other kind. But a court may not devise novel rules to favor arbitration over litigation." 596 U.S. 411, 418 (citation omitted). In other words, "[t]he federal policy is about treating arbitration contracts like all others, not about fostering arbitration." *Id.*

Turning then to West Virginia law on contract formation, it is axiomatic that a contract requires an offer, acceptance, and consideration. *Dan Rylan Builders, Inc. v. Nelson*, 737 S.E.2d 550, 556 (W. Va. 2012) (citations omitted). In this case, CMH offered to sell the Brownings a modular home, the Brownings agreed to the sale and the purchase price, and the Brownings made a downpayment. As part of the contractual arrangement, both the Sales Agreement and the BDRA

---

[6]As this Court recently explained in *CMH Homes, Inc. v. Greenfield*, Civ. Act. No. 3:22-0504, 2023 WL 4190550 (S.D. W. Va. June 26, 2023), "while a federal court may adjudicate a claim of fraud in the inducement under § 4 of the FAA of the arbitration clause itself as it goes to the making of the agreement to arbitrate,' the court may not 'consider claims of fraud in the inducement of the contract generally." 2023 WL 4190550, at *3 (footnote, internal quotation marks, and citations omitted).

were executed and dated on the same day. The Brownings do not contest these facts, and the Court has no difficulty concluding that a contract was formed.

The Brownings insist, however, the BDRA should not be enforced because it is a contract of adhesion and is unconscionable. The West Virginia Supreme Court has explained that a contact of adhesion exists when an agreement is

> drafted and imposed by a party of superior strength that leaves the subscribing party little or no opportunity to alter the substantive terms, and only the opportunity to adhere to the contract or reject it. A contract of adhesion should receive greater scrutiny than a contract with bargained-for terms to determine if it imposes terms that are oppressive, unconscionable or beyond the reasonable expectations of an ordinary person.

Syl. Pt. 11, *Brown v. Genesis Healthcare Corp*. (commonly referred to as "*Brown II*"), 729 S.E.2d 217 (W. Va. 2012) (internal quotation marks and citation omitted). A finding that a contact of adhesion exists, however, is simply the beginning of a court's analysis as the court must "distinguish[] good adhesion contracts which should be enforced from bad adhesion contracts which should not." *State ex rel. Dunlap v. Berger*, 567 S.E.2d 265, 273 (2022) (internal quotation marks, citation, and footnote omitted). "Since the bulk of contracts signed in this country, if not every major Western nation, are adhesion contracts, a rule automatically invalidating adhesion contracts would be completely unworkable." *Id.* (internal quotation marks and citation omitted). To determine whether adhesion contracts are unconscionable requires a "case-by-case" analysis. *Id*. at 276 n.5.

Generally speaking, ""[t]he doctrine of unconscionability means that, because of an overall and gross imbalance, one-sidedness or lopsidedness in a contract, a court may be

justified in refusing to enforce the contract as written." Syl. pt. 4, *Brown II*, in part (internal quotation marks and citation omitted). Thus, the Court must consider the facts and circumstances of a particular case to determine whether unconscionability exists. *Id.* West Virginia law requires both procedural and substantive unconscionability, although not to the same degree, to make a contractual term unenforceable. *See Rent-A-Ctr., Inc. v. Ellis*, 827 S.E.2d 605, 616 (W. Va. 2019) (discussing the need for both procedural and substantive unconscionability, but stating a court "should apply a sliding scale to determine whether a contract is unconscionable" (internal quotation marks and citations omitted)).

The Brownings insist the agreement here is procedurally unconscionable as they are typical consumers who could not possibly have understood the small-print legalese in the BDRA. Moreover, they contend they had no choice but to sign the document or they would have been forced to walk away from the purchase. *See* Syl. Pt. 10, *Brown II* (stating, in part, procedural unconscionability "include[s], but [is] not limited to, the age, literacy, or lack of sophistication of a party; hidden or unduly complex contract terms; the adhesive nature of the contract; and the manner and setting in which the contract was formed, including whether each party had a reasonable opportunity to understand the terms of the contract" (internal quotation marks and citations omitted)).[7] However, the West Virginia Supreme Court has rejected similar arguments.

---

[7] In support of its argument of unconscionability, the Brownings cite, in part, *Gooch v. Cebridge Acquisition LLC*, Civ. Act. No. 2:22-00184, 2023 WL 415984 (S.D. W. Va. 2023). In *Gooch*, the district court found that an arbitration agreement between a consumer and an internet, television, and phone provider was procedurally and substantively unconscionable. 2023 WL 415984, **15, 20. However, *Gooch* involved an analysis of a completely different agreement and different facts that are distinguishable in a number of ways from this case. Thus, other than general statements of law that the Court already has discussed, the Court finds *Gooch* irrelevant.

For instance, in *Nationstar Mortgage, LLC v. West*, 785 S.E.2d 634 (W. Va. 2016), the West Virginia Supreme Court found the bargaining power between a lender and borrowers, while unequal, was not grossly so. 237 S.E.2d at 640 (citation omitted). Additionally, it stated that "the inclusion of an arbitration provision within a mortgage loan agreement does not strike this Court as beyond the reasonable expectations of an ordinary person, or [as an] oppressive or unconscionable term[]." *Id*. (internal quotation marks, citation, and footnote omitted). Moreover, the West Virginia Supreme Court found there was "[n]othing about the circumstances of the closing, which frankly comports with the *quotidianus* reality of real estate closings—hurried document execution with minimal comprehension by the signatories—suggests that the agreement is unenforceable based on principles of unfairness." *Id*. Thus, the Court found the borrowers had not shown the arbitration agreement was procedurally unconscionable. *Id.*

Likewise, in *Lawhun v. CMH Homes, Inc.*, Civ. Act. No. 1:22-112, 2023 WL 5280909 (N.D. W. Va. Aug. 16, 2023), the district court recently determined the purchasers of a manufactured home from CMH failed to demonstrate procedural unconscionability under West Virginia law in what appears to be the exact same BDRA. 2023 WL 5280909, at *6. In doing so, the court found the BDRA did "not lack mutuality nor [did the purchasers] explain how it is one-sided, unreasonable and unconscionable, and provides the sophisticated drafters of a contract of adhesion with greater rights to seek legal redress than the [purchasers]. Nor [did the purchasers point[] . . . [to] "terms that are oppressive, unconscionable or beyond the reasonable expectations of an ordinary person.'" *Id.* (quoting *Brown II*, 729 S.E.2d at 228). Comparably, in *CMH Homes, Inc. v. Wilson*, Civ. Act. No. 2:18-34-KS-MTP, 2018 WL 3764120 (Miss. May 16, 2018), the district court found no procedural unconscionability under Mississippi state law based upon the

purchasers' argument the BRDA they entered into with CMH was drafted unilaterally, it was presented as a take-it-or-leave it offer, and they were not represented by counsel. 2018 WL 3764120, at *2.

Applying the standard for procedural unconscionability to this case, the Court reaches the same result. From a procedural perspective, the Brownings have not demonstrated any facts or circumstances that remove this case from a typical arbitration agreement in a consumer transaction. Although the Brownings argue they had no choice but to sign the BDRA if they wanted to purchase the home, this fact does not make the BDRA unconscionable. Additionally, despite the Brownings' assertion the terms are complex, they do not quote or cite any particular legalese they found to be unconscionable. Thus, upon review of the Brownings' arguments, the Court finds they simply have not shown the BDRA is procedurally unconscionable as required under West Virginia law. *See Lawhun*, 2023 WL 5280909, *6 (stating "[a]ssertions in a brief, unsupported by the record, do not establish procedural unconscionability" (citation omitted)).

However, even if procedural unconscionability did exist, the Court also finds the Brownings have failed to show the BDRA is substantively unconscionable. In this regard, the Brownings argue it is substantively unconscionable because of the exorbitant fees and costs associated with arbitration. The Brownings claim that they had to pay $2,900 in order for them to appear in the arbitration and file a counterclaim against CMH for $299,990. *Resp. in Opp'n to Pet. to Compel Arbitration*, at 2, ECF No. 5 (citing *Detail Invoice/Statement* (May 10, 2023), ECF No. 5-1). Furthermore, the Brownings assert they will have to pay an additional $2,200 "final fee" after a final hearing date is selected for the arbitration. *Id.* (citing *Constr. Indus. Arbitration Rules and*

*Mediation Procedures* (Effective May 1, 2022), ECF No. 5-2). If the Brownings increase their demand to at least $300,000 to less than $500,000, their initial fee and final fee respectively rise to $4,400 and $3,850. *Id.* Additionally, the Brownings claim they will be responsible to pay one-third of the arbitrator's fee at a rate of $300 per hour, and they already paid $233.33 for their portion of the arbitrator's work for the Scheduling Conference. *Id*. at 3 (citing *Ltr. from Kelly Fernandes, Case Admin.*, to W. Scott Simpson, Thomas F. Basile, and Jason D. Bowles (June 30, 2023), ECF No. 5-4). The Brownings state "it would not be unreasonable to imagine the arbitrator investing 70-100 hours in this matter when all is said and done," with their share of the arbitrator's fee falling between $7,000 to $10,000. *Id.* at 6. The Brownings argue the total of all these costs and fees likely, at a minimum, will lie between $12,000 to $15,000, which are excessive when compared to the less than $300 it would cost to file in state and the $405 it would cost to file in federal court. *Id.*

In *Green Tree Financial Corp.-Alabama v. Randolph*, 531 U.S. 79 (2000), the Supreme Court held that "[t]he existence of large arbitration costs could preclude a litigant . . . from effectively vindicating her . . . rights in the arbitral forum[.]" 531 U.S. at 90. Where "a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." 531 U.S. at 92. Relying, in part, upon *Green Tree*, the West Virginia Supreme Court likewise held:

> Provisions in a contract of adhesion that if applied would impose unreasonably burdensome costs upon or would have a substantial deterrent effect upon a person seeking to enforce and vindicate rights and protections or to obtain statutory or common-law relief and remedies that are afforded by or arise under state law that exists for the benefit and protection of the public, are unconscionable; unless the court determines that exceptional circumstances exist that make the provisions conscionable. In any

> challenge to such a provision, the responsibility of showing the costs likely to be imposed by the application of such a provision is upon the party challenging the provision; the issue of whether the costs would impose an unconscionably impermissible burden or deterrent is for the court.

Syl. Pt. 4, *Dunlap*. Reaffirming this position, the West Virginia Supreme Court held in *State ex rel. Richmond American Homes v. Sanders*, 717 S.E.2d 909 (W. Va. 2011), that when "an agreement to arbitrate imposes high costs that might deter a litigant from pursuing a claim, a trial court may consider those costs in assessing whether the agreement is substantively unconscionable." 717 S.E.2d at 921.

In support of their argument that the fees and costs associated with arbitrating their claim is unconscionable, the Brownings cite *CMH Homes, Inc. v. Sexton*, 441 F. Supp.3d 1202 (D. N.M. Feb. 20, 2020). In *Sexton*, a consumer had purchased a manufactured home from CMH and signed a BDRA as part of the sale. 441 F. Supp.3d 1205. When a dispute arose, CMH moved to compel arbitration in federal court, and the purchaser filed an action in state court alleging violations of state law. *Id.* at 1206-07.[8] The purchaser opposed arbitration on the ground that the costs associated with arbitration "would create an extreme financial hardship, and it thus [is] unconscionable and unenforceable." *Id*. at 1210. In evaluating the purchaser's opposition, the district court estimated his responsibility to be at least $6,000 and perhaps up to $11,000 in costs and fees for the arbitrator, which is money the purchaser would not spend in a judicial forum. *Id*. at 1214.[9] The district court also considered the purchaser's affidavit in which he detailed his

---

[8]The state action was removed to federal court and consolidated with the federal action. *Id.* at 1207.

[9]The district court stated these figures were based on a low-end estimate of $1,000 per day. *Id*. The district court further said these amounts did not account for the purchaser's responsibility

-11-

financial profile, showing he had little money to pay for arbitration. *Id.* at 1213. Therefore, in light of the cost of arbitration compared to the purchaser's inability to pay those costs, the district court held the purchaser had "satisfied his burden of showing financial hardship and that the cost-sharing provision of the arbitration clause would prevent effective vindication of his statutory claims" and "the provisions of the agreement that mandate [CMH] may half the arbitrator compensation are unconscionable and unenforceable." *Id.* at 1215 (citations omitted).[10] *See Bradford v. Rockwell Semiconductor Sys., Inc.,* 238 F.3d 549, 558 (4th Cir. 2001) (agreeing with the district court that the plaintiff had "failed to demonstrate any inability to pay the arbitration fees and costs, much less prohibitive financial hardship, to support his assertion that the fee-splitting provision deterred him from arbitrating his statutory claims").

Although the district court in *Sexton* ultimately severed the cost-sharing provision from the arbitration agreement and referred the case to arbitration,[11] this Court need not go that far because *Sexton* is distinguishable. It is clear under the law of both New Mexico and West Virginia that the burden is on those challenging an arbitration agreement to show that they will incur costs and fees that make the arbitration prohibitively expensive. In *Sexton*, the purchaser met his burden by breaking down the costs and fees and submitting an affidavit demonstrating his

---

to pay "his share of travel and other expenses of the arbitrator and witnesses, as required by the AAA Rules." *Id.*

[10] In making its determination, the district court also recognized that the New Mexico Supreme Court had "approv[ed] of the effective vindication doctrine in which a party's arbitral forum for resolving statutory claims will be enforceable so long as the prospective litigant effectively may vindicate its statutory cause of action in the arbitral forum." *Id.* at 1212 (internal quotation marks and citation omitted).

[11] *Id.* at 1215-16.

-12-

financial situation and his inability to pay those expenses. In this case, however, the Brownings did not submit any affidavits or documentation regarding their inability to pay for arbitration. Instead, they merely state in their Response brief that they will be burdened by the costs and fees, which are prohibitively expensive for average citizens like themselves. Without submitting any evidence to support such a statement, the Court finds such a cursory remark about their inability to pay is simply insufficient for them to meet their burden to show that the cost-sharing arrangement is substantively unconscionable.[12]

Lastly, the Brownings argue arbitration is premature because mediation is a prerequisite to arbitration in the BDRA and the parties were still conducting settlement negotiations when CMH filed for arbitration. However, as this Court stated in *CMH Homes, Inc. v. Greenfield*, Civ. Act. No. 3:22-0504, 2023 WL 4190550 (S.D. W. Va. June 26, 2023), the mediation requirement in the BDRA is a gateway procedural issue and "the arbitrator, not the court, must decide whether" that prerequisite is satisfied. 2023 WL 41905, at *3. In the event "the arbitrator ultimately decides there is no obligation to arbitrate," . . . "'the parties may then seek relief in court under the FAA.'" *Id*. (quoting *Chorley Enterprises, Inc. v. Dickey's Barbecue Restaurants, Inc.*, 807 F.3d 553, 565 (4th Cir. 2015)). Thus, as this issue is for the arbitrator and not the Court to decide, the Court will address it.

---

[12]CMH also argues the Brownings' estimate that the arbitrator will invest 70 to 100 hours of time in the matter is pure conjecture and speculation. As the Brownings have not offered any evidence to support this estimate, the Court agrees with CMH. Nevertheless, even if this estimate is too high, the Court finds it does not matter because the Brownings have not shown their own estimate prevents them from vindicating their claims. CMH also suggests that, under the AAA rules, the amount the Brownings must pay may be deferred or reduced, but the Court finds whether a deferral or reduction actually will occur likewise is speculative.

## III.
## CONCLUSION

Accordingly, the Court finds that the Brownings have failed to show under the facts and circumstances of this case that the BDRA is procedurally or substantially unconscionable as to them. Therefore, finding no reason why arbitration should not proceed, the Court **GRANTS** the Petition to Compel Arbitration and **DISMISSES** this action from the docket of the Court.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER: March 27, 2024

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE